**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**LANDRIA R. ADAMS,**
**individually and on behalf of all**
**others similarly situated,**

  **Plaintiff,**

            **Case No. _____**

**v.**

**GENESIS ELDERCARE REHABILITATION**   **CLASS ACTION COMPLAINT**
**SERVICES, LLC, d/b/a POWERBACK**
**REHABILITATION, LLC, f/k/a GENESIS**    **JURY TRIAL DEMANDED**
**REHAB SERVICES;**
**GENESIS HOLDINGS, LLC;**
**GENESIS HEALTHCARE, INC.,**

  **Defendants.**

_____/

## CLASS ACTION COMPLAINT

  Plaintiff, LANDRIA R. ADAMS, individually and on behalf of all others similarly situated (hereafter "Plaintiff" or "Mrs. Adams"), alleges the following based on personal knowledge as to allegations regarding herself and on information and belief as to others:

## INTRODUCTION

  1.  Plaintiff brings this action on behalf of herself and classes of similarly situated individuals to remedy Defendants' pattern of unlawful discrimination against employees who requested religious exemptions and accommodations from Defendants' COVID-19 vaccine mandate.

  2.  Plaintiff is a healthcare professional who has a sincerely held religious belief against receiving the COVID-19 vaccines because they were either developed from, or tested with,

1

aborted fetal cell lines, and for other religious reasons, which directly violates her sincerely held religious beliefs.

3.      Plaintiff's beliefs were detailed to Defendants, however, they denied her request for religious accommodation from their standardized vaccine policy.

4.      As a direct outcome of Defendants' unlawful actions in denying all or virtually all meritorious exemption requests, Plaintiff was terminated from her employment with Defendants as a consequence of exercising her fundamental and statutory right to refuse administration of the COVID-19 vaccines.

5.      Plaintiff seeks all available compensatory and punitive damages on behalf of all current and former employees of Defendants, and their subsidiaries, who requested a religious exemption and accommodation from Defendants' GRSHR 134 Universal COVID-19 Vaccination Policy (hereinafter "Defendants' Vaccine Policy" or "Policy"), and whose requests were unlawfully denied.

6.      On or about August 2, 2021, Defendants mandated the Policy, requiring all employees to receive the COVID-19 vaccine.

7.      Defendants' Policy stated that, "[i]ndividuals who decline vaccination **for any reason, including medical or religious reasons**, will be removed from the schedule after December 5, 2021, pending a review of the reasons for declining the vaccination." A copy of the August 2, 2021 Vaccine Policy is attached hereto as **Exhibit A**.

8.      Defendants reviewed the Policy in November of 2021, and on or about November 4, 2021, mandated that any employee who would be seeking an exemption must submit a complete written request through the HR Solution Center by November 12, 2021. Defendant further mandated compliance with the Defendants' Vaccine Policy on December 5, 2021, with full

vaccination status be completed by January 4, 2022.

9.      Defendants' accommodation process was not an accommodation process at all, but instead a belated attempt to appear in compliance with Title VII of the Civil Rights Act, while still denying all or substantially all of the religious accommodations requests to the Defendants' Vaccine Policy.

10.     Upon information and belief, thousands of Defendants' employees submitted religious accommodation requests to Defendants in 2021.

11.     All, or virtually all of those who submitted religious accommodation requests were terminated, resigned, or were coerced to receive the COVID-19 vaccine by the deadline of January 27, 2022, including Plaintiff.

## PARTIES

12.     Plaintiff, Landria R. Adams, is a resident of Bushnell, Florida. During the class period she worked as a Physical Therapist for Defendants, specifically their subsidiary Genesis Rehab Services, at Osprey Point Nursing Center located in Bushnell, Florida.  Osprey Point Nursing Center is not currently owned or operated by the Defendants, but does contract out their rehabilitation services with the Defendants.  Plaintiff had worked as a Physical Therapist for the Defendants at that location since 2015.  Plaintiff submitted a written request for religious exemption and accommodation from Defendants' Policy. Defendants discriminated against Plaintiff's sincerely held religious beliefs, refused to provide a reasonable accommodation, and Plaintiff was fired from her job on January 27, 2022. Plaintiff is a major contributor to her family's income. Plaintiff's loss of insurance and other benefits severely impacted her and her family's financial, physical and mental well-being.

13.     Defendant, Genesis Healthcare, Inc., is a Delaware corporation with its principal

place of business at 101 E. State St., Kennett Square, Pennsylvania 19348. It operates hundreds of nursing homes and senior care facilities across the United States. Genesis Healthcare, Inc. also supplies rehabilitation therapy to thousands of healthcare providers across the United States. It runs these operations through multiple subsidiaries in various states. It is estimated that Genesis Healthcare, Inc. has between 40,000 and 70,000 employees.

14.     Defendant, Genesis Eldercare Rehabilitation Services, LLC, is a limited liability company doing business as Powerback Rehabilitation, LLC in Florida. Its principal place of business is at 101 E. State St., Kennett Square, Pennsylvania 19348. It was formerly known as Genesis Rehabilitation Services during Plaintiff's employment and termination, but Defendant rebranded itself as Powerback Rehabilitation in June 2022. Genesis Eldercare Rehabilitation Services, LLC is a subsidiary of Genesis Healthcare, Inc.

15.     Defendant, Genesis Holdings LLC, is a limited liability company registered in Pennsylvania. It is listed as the manager/member for Genesis Eldercare Rehabilitation Services, LLC, and various other Genesis Healthcare, Inc. subsidiaries.

## JURISDICTION AND VENUE

16.     This action arises under the laws of the United States, specifically 42 U.S.C. § 2000e, *et seq*. This action also arises under the laws of the State of Florida, specifically the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes, *et seq*.

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

18.     This Court has personal jurisdiction over Defendants because under *International Shoe* and its progeny, Defendants have at least minimum contacts with Florida such that traditional notions of fair play and substantial justice would not be offended by the exercise of jurisdiction.

In addition, personal jurisdiction is appropriate under Florida's long-arm statute, § 48.193. Defendants, their subsidiaries and affiliated companies, and Genesis executives engaged in unlawful acts within the state of Florida as well as acts outside the state of Florida that caused harm to plaintiffs in the state of Florida.

19.    This Court has personal jurisdiction over the Defendants because it resides in, regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in Florida.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District and because Defendants reside in, regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

## FACTUAL ALLEGATIONS

A.    **DEFENDANTS' MANDATORY COVID-19 VACCINATION POLICY.**

21.    In order to combat the spread of the Covid-19 virus, the United States government began implementing Covid-19 vaccination mandates in 2021.

22.    On or around August 18, 2021, the Center for Medicaid and Medicare Services ("CMS") announced that it would issue a vaccine mandate for all employees at Medicaid and Medicare certified long-term care facilities (i.e. "nursing homes").[1]

23.    On or around November 5, 2021, CMS published the "Medicare and Medicaid

---

[1] *Biden-Harris Administration Takes Additional Action to Protect America's Nursing Home Residents from COVID-19*, CMS.gov, Press Release (August 18, 2021), https://www.cms.gov/newsroom/press-releases/biden-harris-administration-takes-additional-action-protect-americas-nursing-home-residents-covid-19; https://www.cms.gov/files/document/qso-22-09-all-injunction-lifted.pdf.

Programs; Omnibus COVID-19 Health Care Staff Vaccination", expanding the vaccination mandate to all Medicare and Medicaid health care providers.[2]

24.     In the November 5, 2021, interim final rule ("IFR"), CMS stated that:

In implementing the COVID-19 vaccination policies and procedures required by this IFC, however, employers must comply with applicable Federal anti-discrimination laws and civil rights protections. Applicable laws include: (1) The Americans with Disabilities Act (ADA); (2) Section 504 of the Rehabilitation Act (RA); **(3) Title VII of the Civil Rights Act of 1964**; (4) the Pregnancy Discrimination Act; and (5) the Genetic Information Nondiscrimination Act.

86 FR 61555, 61568 (2021) (emphasis added).[3]

25.     Title VII of the Civil Rights Act of 1964 ("Title VII") makes it an unlawful employment practice under 42 U.S.C. § 2000e for an employer to "fail to reasonably accommodate the religious practices of an employee or prospective employee, unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business." 29 C.F.R. § 1605.2(b)(1).

26.     Even before CMS implemented its vaccine policy, Defendants instituted its own standardized Covid-19 vaccination policy for its employees.

27.     On or around August 2, 2021, Defendants released their Policy, which stated that "[i]ndividuals who decline vaccination **for any reason, including medical or religious reasons**, will be removed from the schedule after December 5, 2021, pending a review of the reasons for declining the vaccination." See **Ex. A.**

28.     In direct contradiction of 86 FR 61555 and in violation of Title VII, Defendants required all employees to receive the COVID-19 vaccination regardless of religious or medical

---

[2] *Biden-Harris Administration Issues Emergency Regulation Requiring COVID-19 Vaccination for Health Care Workers*, Press Release, CMS.gov (November 4, 2021), https://www.cms.gov/newsroom/press-releases/biden-harris-administration-issues-emergency-regulation-requiring-covid-19-vaccination-health-care; https://www.cms.gov/files/document/qso-22-09-all-injunction-lifted.pdf.

[3] "Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination," 86 FR 61555 (2021), https://www.federalregister.gov/documents/2021/11/05/2021-23831/medicare-and-medicaid-programs-omnibus-covid-19-health-care-staff-vaccination.

accommodation requests.

29.     Defendants sought to enforce its vaccination policy on employees through the threat of termination, without allowing for religious and medical accommodations required by law.

**B.     PLAINTIFF'S EXPERIENCE**

30.     In early November of 2021, Mrs. Adams was informed by Defendants that the company would be requiring all employees to receive a COVID-19 vaccine, per Defendants' Policy.

31.     On or about November 10, 2021, Mrs. Adams submitted a medical and religious exemption request from the Defendants' Policy.

32.     On or about November 10, 2021, Mrs. Adams received a response from Erin Casto, Manager, Human Resources, which included the Defendants' Policy, and a request for additional information.

33.     On or about November 10, 2021, Mrs. Adams responded to Erin Casto, and inquired as to the ruling on her religious exemption.

34.     On or about November 11, 2021, Erin Casto responded to Mrs. Adams' inquiry, asking her to complete a formal Religious Accommodation Request Form.

35.     On or about November 18, 2021, Mrs. Adams submitted a Religious Accommodation Request Form, to which she attached a personal letter and a letter from her pastor detailing Mrs. Adams' sincerely held religious beliefs. The Religious Accommodation Request Form and accompanying letters are attached hereto as **Exhibit B**.

36.     Plaintiff timely submitted her religious accommodation request pursuant to Defendant's COVID-19 Vaccination Policy.

37.     On or about November 18, 2021, Erin Casto responded to Mrs. Adams's request

form, asking for additional information to be submitted by November 24, 2021, in order to consider the request for accommodation.

38.     The requested additional information from Erin Casto were as follows: (1) Please provide clarification concerning why your religious belief is against the COVID-19 vaccine; (2) Please provide documentation to support your avoidance of all products that have been derived this way, similar to COVID-19 vaccines; and (3) Do you avoid all other vaccines?  A complete copy of this requested additional information is attached hereto and incorporated herein as **Exhibit C.**

39.     On or about November 19, 2021, Mrs. Adams submitted the additional requested information and provided her answers to the three questions. A copy of these responses is attached as **Exhibit D**.

40.     On or about November 22, 2021, Erin Casto informed Mrs. Adams that she had received the requested documentation and had submitted her request for review.

41.     On or about November 23, 2021, Erin Casto informed Mrs. Adams that they had reviewed her request for a religious exemption and her supplemental responses and it did not meet their criteria for an exemption from their universal vaccine policy. A complete and true copy of Mrs. Adams' denial is attached hereto and incorporated herein as **Exhibit E**.

42.     No specific criteria was given by Erin Casto for which Mrs. Adams' request for a religious exemption from the Defendants' vaccination policy was denied.

43.     On or about November 23, 2021, Mrs. Adams requested to know what criteria she had failed to meet, and if she would be receiving her accrued personal and vacation time that had not been utilized.

44.     Mrs. Adams also reiterated in her response that she was willing to comply with any

surveillance testing protocols, self-monitoring and reporting protocols, masking requirements, and any other reasonable safety measures that might be required by the Defendants in order for her to continue her employment with Defendant.

45.     On or about November 24, 2021, Mrs. Adams received a response from Meredith Shansky that the documentation she had submitted did not show that her religion was against the vaccine. A complete copy of Meredith Shansky's response is attached hereto and incorporated herein as **Exhibit F**.

46.     Again, Meredith Shansky's response did not specifically detail how Mrs. Adams's submission did not support her religious beliefs being against the COVID vaccine.

47.     On or about November 24, 2021, Mrs. Adams responded to Meredith Shansky and stated that she believed her letter and her pastor's letter indicated her participation in church as well as her sincere belief that her body is a temple that should not be desecrated by taking the COVID shot/vaccine.

48.     In fear of being terminated, Mrs. Adams reached out to the undersigned attorney, Micah Ann Adams, and requested legal advice and assistance.

49.     On or about November 29, 2021, the Defendants' received by email, regular USPS mail, and certified mail a demand letter on behalf of Mrs. Adams requesting the Defendants to correct their denial of Mrs. Adams's religious exemption request.  A copy of this letter is attached hereto and incorporated herein as **Exhibit G**.

50.     On or about December 2, 2021, Mrs. Adams received notice that her request for exemption from the Defendants' vaccine policy was provisionally approved, that the exemption would be in effect until the legal challenges to the CMS vaccine mandate were resolved, at which time her request would be reopened for review.

51.     On or about January 18, 2021, Mrs. Adams received a message from Kim Stahr informing her that the legal challenges to the CMS vaccine mandate had been resolved, that her request for accommodation had been reviewed, and that it had not met the criteria for an exemption from the Defendants' vaccine policy.

52.     The message from Kim Stahr on January 18, 2021 further stated that if Mrs. Adams did not receive the vaccine, she would be removed from the schedule after January 27, 2022.

53.     The message, once again, did not provide the specific criteria that Mrs. Adams's religious exemption request had failed to meet.

54.     On or about January 21, 2022, the Defendants' were sent by regular USPS mail, and certified mail, a demand letter on behalf of Mrs. Adams, again requesting the Defendants correct their unlawful denial of Mrs. Adams's religious exemption request, and that if Mrs. Adams was wrongfully terminated, legal action would be sought.  A copy of this letter is attached hereto and incorporated herein as **Exhibit H**.

55.     On or about January 24, 2022, the Defendants also received a copy of the demand letter through email.

56.     On or about January 24, 2022, Mrs. Adams's attorney was contacted by Lauren Fuiman Cell, Assistant General Counsel, Employment and Litigation, Genesis Administrative Services, LLC, that she was available for a phone conference that afternoon.

57.     On or about January 24, 2022, Mrs. Adams learned through the phone conference between her attorney and Lauren Fuiman Cell that because Mrs. Adams had previously received a flu vaccine several years ago, that Mrs. Adams's genuinely held religious beliefs were deemed inadequate to receive a religious exemption.

58.     This determination was made despite Mrs. Adams having previously provided

documentation and explanation that detailed her vaccination history, why the vaccines she had previously received were not incongruent with her religious beliefs, and how the COVID-19 vaccine was contrary to her religious beliefs.

59.     On or about January 27, 2022, Mrs. Adams was terminated from her employment as a physical therapist with the Defendants.

60.     On or about January 28, 2022, Mrs. Adams received an email with an attached letter from Natalie Mundy, COAD, her supervisor, acknowledging that her last day was January 27, 2022.  A copy of this letter is attached hereto and incorporated herein as **Exhibit I**.

## C.     PLAINTIFF AND HER SINCERELY HELD RELIGIOUS BELIEFS

61.     Mrs. Adams holds sincerely held religious beliefs that precludes her from complying with the Defendants' Vaccine Policy because of the connection of all three COVID-19 vaccines to the cell lines of aborted fetuses.

62.     It is undisputed that the Johnson & Johnson (Janssen Pharmaceuticals), Moderna, and Pfizer-BioNTech COVID-19 vaccines were researched with, developed, produced, manufactured, tested on, or otherwise connected to aborted fetal cells.[4]

63.     To specify, Mrs. Adams believes that all life is sacred, from the moment of conception until death, and that abortion is murder, and as such, is a mortal sin.

64.     Mrs. Adams derives her genuinely held beliefs from the Bible, which she believes is the divine word of God, and thus, conforms her life, decisions and actions to its teachings.  She relies on Scripture as she navigates life and believes she must adhere to its commands and tenants, no matter the consequences.

---

[4] *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines 2* (Oct. 5, 2021), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj /https://www.ndsu.edu/fileadmin/centers/immunize/documents/COVID-19_Vaccine_Fetal_Cell_Handout_10.1.21.pdf ("The non-replicating viral vector vaccine produced by Johnson & Johnson did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine"); Louisiana Dept. of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ 2* (Dec. 21, 2020), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf.

65.     Mrs. Adams cites Psalm 139:13-14, "For you formed my inward parts; you knitted me together in my mother's womb.  I praise you, for I am fearfully and wonderfully made." (ESV). *See* Ex. B.

66.     Mrs. Adams also relies upon 1 Corinthians 6:19-20, which asks, "Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God?  You are not your own, for you were bought with a price. So glorify God in your body."  And, 1 Corinthians 3:16-17, "Do you not know that you are God's temple and that God's Spirit dwells in you?  If anyone destroys God's temple, God will destroy him.  For God's temple is holy, and you are that temple." *See* Ex. B.

67.     Mrs. Adams outlines how she understands these verses to forbid her from receiving any COVID-19 vaccination in her previously referenced letter for her request for accommodation. Ex. B. To do otherwise, she firmly believes, would be a direct violation, transgression and profanation to her physical body, her spiritual beliefs, and to God.

## D.    PLAINTIFF WAS WRONGFULLY TERMINATED AND SUFFERED HARM AS A RESULT.

68.     Plaintiff's termination on or about January 27, 2022, was wrongful as it was the direct result of Defendants' unlawful employment practices that discriminated against Plaintiff's sincerely held religious beliefs.

69.     As a direct result of Defendants' wrongful termination of Plaintiff, Plaintiff was unexpectedly without gainful employment.

70.     As a direct result of Defendants' wrongful termination of Plaintiff, Plaintiff and her family suffered economic hardship from the loss of her employment.

71.     As a direct result of Defendants' wrongful termination of Plaintiff, Plaintiff has suffered and continues to suffer mental anguish, physical and emotional distress, loss of dignity,

and other intangible injuries.

**E.    GRANTING PLAINTIFF'S RELIGIOUS ACCOMMODATION REQUEST WOULD NOT HAVE CAUSED DEFENDANT UNDUE HARDSHIP**

72.    Granting Plaintiff and the Classes' requests for religious accommodation to Defendant's Vaccine Policy would not have resulted in undue hardship on the conduct of Defendant's business.

73.    In support of this conclusion, Plaintiff offers the below interaction between Plaintiff and Defendant's employees as an example.

74.    On or about April 10, 2023, more than a year after her termination, Plaintiff received text message communications from her former manager offering Plaintiff her job at Genesis back. The Defendant employee stated that Genesis was "wayyyy more lenient" with their religious accommodation process now. A copy of the text message exchange is attached hereto and incorporated herein as **Exhibit J**.

75.    Upon information and belief, Genesis never operated a valid religious accommodation application process, but merely fired employees who did not get vaccinated regardless of their religious or medical accommodation requests.

76.    Further, Defendant would not have suffered an undue hardship by granting the religious accommodations of Plaintiff and the class, as evidenced by their offer to allow Plaintiff to return to work unvaccinated a year later.

**F.    FLORIDA COMMISSION ON HUMAN RIGHTS FOUND THAT DEFENDANT VIOLATED PLAINTIFF'S RIGHTS**

77.    An employer cannot implement policies or take actions that violate an employee's constitutionally protected rights in the State of Florida.

78.    The Florida Civil Rights Act of 1992 (the "FCRA") contains numerous rules

protecting the rights of employees.

79.    The FCRA states that it is unlawful in Florida to "discharge or to fail or refuse to hire any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a).

80.    The FCRA further states that if a discriminatory action should occur, the plaintiff can submit a claim to the Florida Commission on Human Rights ("FCHR") within 365 days of the alleged violation. Fla. Stat. § 760.11.

81.    If the FCHR determines "that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992" the aggrieved party may "[b]ring a civil action against the person named in the complaint in any court of competent jurisdiction." Fla. Stat. § 760.11(4).

82.    On or about August 26, 2022, Plaintiff dual-filed her charge to the FCHR and EEOC alleging religious discrimination by Defendant.

83.    On February 17, 2023, the FCHR issued a Notice of Determination of "REASONABLE CAUSE" determining that there is reasonable cause to believe that Defendant unlawfully discriminated against Plaintiff by denying her religious accommodation request and terminating her for failing to receive the COVID-19 Vaccine. A copy of the Notice of Determination: Reasonable Cause from the FCHR is attached hereto and incorporated herein as **Exhibit K**.

84.    On April 17, 2023, the U.S. Equal Employment Opportunity Commission (EEOC) issued a Conciliation Failure and Notice of Right to Sue.  A copy of the Conciliation Failure and Notice of Rights from the EEOC is attached hereto and incorporated herein as **Exhibit L**.

## CLASS ACTION ALLEGATIONS

85.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23 against Defendants on Plaintiff's own behalf and on behalf of the "Nationwide Class" defined below:

> All employees of Genesis Healthcare, Inc. or any of its subsidiaries, who, between February 2021, and February 2022, submitted a request for religious exemption or accommodation from Genesis Healthcare's Mandatory Covid-19 Vaccine Policy, and whose requests were unlawfully denied in violation of Title VII (the "Nationwide Class").

86.     Plaintiff also alleges the following "Florida Class":

> All employees of Genesis Healthcare, Inc., or any of its subsidiaries, who resided or worked in the State of Florida between February 2021 and February 2022, that submitted a request for religious exemption from Genesis Healthcare's Mandatory COVID-19 Vaccine Policy, and whose requests were unlawfully denied in violation of F.S. § 760.10 (the "Florida Class").

87.     The Nationwide Class and Florida Class are collectively referred to herein as the "Classes."

88.     Excluded from the Classes are Defendants, their subsidiaries and affiliates, their officers, directors, the members of their immediate families, and any entity in which Defendants have a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are judicial officer(s) to whom this action is assigned, and the members of their immediate families.

89.     Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

90.     Plaintiff meets the prerequisites of Rule 23(a) to bring this class action on behalf of

the Classes.

91.    *Numerosity*. The members of the Classes are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to Class discovery, the Classes consist of many thousands of members, the identity of whom are within the exclusive knowledge of the Defendant and can be ascertained only by resorting to Defendant's records. Through the evaluation of Defendant's data, it is possible to identify all members of the Classes.

92.    *Commonality*. There are numerous questions of law and fact common to the Classes relating to Defendants' employment practices challenged herein, and those common questions predominate over any questions affecting only individual members of the Classes. The common questions include, but are not limited to:

   a.   Whether Defendants have a policy and/or practice of denying all religious accommodation requests from its Policy;

   b.   Whether Defendants have a policy and/or practice of taking adverse action against employees who do not receive the COVID-19 vaccine;

   c.   Whether Defendants complied with federal and state law when they indiscriminately denied religious exemption and accommodation requests *en masse*;

   d.   Whether Defendants complied with their obligations under federal law to engage in the interactive process when responding to each exemption request;

   e.   Whether Defendants violated state and federal law when they denied Plaintiff's reasonable request for accommodation from the vaccine;

   f.   Whether Defendants' termination of Plaintiff and members of the Classes constitutes a violation of federal and state law pertaining to religious discrimination

by employers;

g.   Whether Plaintiff and other class members have been injured as a result of Defendant's unlawful conduct;

h.   Whether Defendant violated Title VII and the Florida Civil Rights Act;

i.   The proper measure of damages; and

j.   The declaratory and injunctive relief to which the Classes are entitled.

93.   *Typicality*. Plaintiff's claims are typical of other class members' claims in that Plaintiff, like all members of the Classes, made in good faith, a meritorious request for religious exemption and accommodation from the Policy, and Defendants discriminated against her religious beliefs and denied her request. Plaintiff and class members all suffered the same type of economic harm as a result of discrimination. Plaintiff has substantially the same interest in this matter as all other class members, and her claims arise out of the same set of facts and conduct as the claims of all other class members.

94.   *Adequacy of Representation*. Plaintiff is an adequate representative of the Classes because Plaintiff was an employee for Defendants and has suffered damages as a result of Defendants' discrimination and wrongful termination. In addition:

a.   Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and federal court litigation;

b.   There is no hostility of interest between Plaintiff and the unnamed Class members;

c.   Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d.   Plaintiff's legal counsel has the financial and legal resources to meet the substantial

costs and legal work associated with this type of litigation.

95.     *Predominance*. The questions of law and fact common to the Classes as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

96.     *Superiority*. A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Absent a class action, the class members will continue to suffer losses and Defendants' misconduct will proceed without remedy. Additionally, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COUNT I
## VIOLATION OF THE FLORIDA CIVIL RIGHTS
## ACT OF 1992, F.S. § 760.10
## (On behalf of Plaintiff and the Florida Class)

97.     Plaintiff hereby realleges and incorporates each and every allegation in paragraphs one through ninety-six (1-96) as if fully set forth herein.

98.     The Florida Civil Rights Act of 1992 (the "Act") protects Plaintiff from discrimination by her employer with respect to "compensation, terms, conditions, or privileges of employment, because of that individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

99.     The statute applies to public and private employment and therefore Defendants are

governed by the statute.

100.    Plaintiff holds a sincere religious belief that precludes her from receiving a COVID-19 vaccine.

101.    Plaintiff informed Defendants of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

102.    Granting Plaintiff's exemption would not impose an undue burden on the Defendants, therefore, it was required that Defendants grant exemption for sincerely held religious beliefs.

103.    Defendants failed to provide Plaintiff with religious exemptions and reasonable accommodations, thereby discriminating against Plaintiff because of her religious beliefs.

104.    Defendants' failure to provide religious exemptions and accommodations has harmed and will continue to harm Plaintiff.

105.    As a direct and proximate result of Defendants' discrimination, Plaintiff and members of the Florida Class have been injured and suffered damages in the amount of lost wages and benefits, costs associated with a new job search and medical expenses, mental anguish, and loss of dignity.

106.    Plaintiff and Florida Class members are entitled to injunctive relief to prevent Defendant from continuing to engage in discriminatory conduct.

107.    Plaintiff completed all conditions required to bring this action, including filing charges with the Florida Commission on Human Rights ("FCHR") alleging unlawful actions by Defendant on a class-wide basis. Plaintiff has been granted the right to sue under the FCRA, as a result of the "Reasonable Cause" finding made by the FCHR.

108.    Defendants' actions were willful and done with malice.

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.**
**Religious Discrimination - Failure to Accommodate**
**(On behalf of Plaintiff and the Nationwide Class)**

109.    Plaintiff hereby realleges and incorporates each and every allegation in paragraphs one through ninety-six (1-96) as if fully set forth herein.

110.    Title VII of the Civil Rights Act of 1964 prohibits Defendants from discriminating against their employees on the basis of their sincerely held religious beliefs.

111.    Plaintiff holds sincere religious beliefs that precludes her from receiving a COVID-19 vaccine.

112.    Plaintiff informed Defendants of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

113.    Granting Plaintiff's exemption would not impose an undue burden on the Defendants, therefore, it was required that Defendants grant exemption for sincerely held religious beliefs.

114.    Defendants failed to provide Plaintiff with religious exemptions and reasonable accommodations, thereby discriminating against Plaintiff because of her religious beliefs.

115.    Defendants' failure to provide religious exemptions and accommodations has harmed and will continue to harm Plaintiff.

116.    As a direct and proximate result of this retaliation, Plaintiff and members of the Nationwide Class have been injured and suffered damages including lost wages and benefits, loss of front pay and back pay, and costs associated with new job search and medical expenses. Plaintiff and other class members have also suffered emotional and physical distress, mental and physical anguish, loss of reputation and dignity

117.    Plaintiff and members of the Nationwide Class are entitled to injunctive relief to

prevent Defendant from continuing to engage in discriminatory conduct.

118.    Plaintiff filed charges with the EEOC complaining of these unlawful actions on a class wide basis and received a notice of right to sue.

119.    Defendants' actions were willful and done with malice.

**COUNT III**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.**
**Religious Discrimination - Retaliation**
**(On behalf of Plaintiff and the Nationwide Class)**

120.    Plaintiff hereby realleges and incorporates each and every allegation in paragraphs one through ninety-six (1-96) as if fully set forth herein.

121.    Title VII prohibits employers from retaliating against their employees for engaging in protected activity.

122.    Plaintiff engaged in protected activity when she submitted a written request for a religious accommodation to Defendant's Policy.

123.    Plaintiff and members of the Nationwide Class were retaliated against for engaging in a protected activity.

124.    Defendant retaliated against Plaintiff and members of the Nationwide Class by terminating them.

125.    As a direct and proximate result of this retaliation, Plaintiff and Nationwide Class members have been injured and suffered damages including lost wages and benefits, loss of front pay and back pay, and costs associated with new job search and medical expenses. Plaintiff and other class members have also suffered emotional and physical distress, mental and physical anguish, loss of reputation and dignity.

126.    Plaintiff filed charges with the EEOC complaining of these unlawful actions on a class wide basis and received a notice of right to sue.

127.     Defendants' actions were willful and done with malice.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court:

A.     Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

B.     Declare Defendants liable pursuant to each and every one of the above-numerated causes of action;

C.     An order awarding appropriate injunctive relief against the conduct of the Defendants described herein;

D.     Declare Defendants' vaccine mandate policy and practices to be unlawful and discriminatory;

E.     Declare Defendants' practices outlined herein to be unlawful and discriminatory;

F.     An award to Plaintiff and class members of all damages, including lost wages and benefits due to unpaid suspension, lost wages and benefits due to wrongful discharge or constructive discharge, backpay, reinstatement or front pay, pre-judgment and post-judgment interest; punitive damages, and compensatory damages, including, but not limited to, damages for pain and suffering, mental anguish, loss of dignity, suffering and anxiety, other intangible injuries, medical expenses, costs associated with new job search, reduction in wages, and expenses, costs, and other damages due to Defendants' wrongful conduct.

G.      An award of punitive damages pursuant to § 760.11(5), Florida Statutes, and 42 U.S.C. § 1981a-(b)(1) for engaging in discriminatory practices with malice or with reckless indifference to the state and federally protected rights of the aggrieved individuals;

H.      An award of attorneys' fees, expert witness fees, and costs, as provided by 42 U.S.C. § 2000e-2(k) and F.S. § 760.11(5);

I.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute;

J.      Enjoin Defendants from engaging in the practices outlined herein;

K.      Grant Plaintiff and the Classes a trial by jury;

L.      Grant leave to amend these pleadings to conform to evidence produced at trial; and

M.      Grant such other and further relief as this Court may deem just, equitable, or proper.

## **JURY DEMAND**

Plaintiff, by counsel, respectfully requests a trial by jury on all causes of action so triable.

Dated: July 14, 2023.                    Respectfully Submitted,

*Micah Ann Adams*

Micah Ann Adams
Florida Bar No. 1032030
Felix M. Adams
Florida Bar No. 0358282
**ADAMS & ADAMS LAW, PLLC**
230 Main Street
Bushnell, Florida 33513
micahadams@felixadams.com
felixadams@felixadams.com
marissa@felixadams.com
Phone: (352) 793-6900
Attorneys for Plaintiff

**JOHNSON FIRM**
Christopher D. Jennings*
Tyler B. Ewigleben*
Laura Edmondson*
Winston S. Hudson
Florida Bar No. 1033252
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com
ledmondson@yourattorney.com
winston@yourattorney.com

*\* Pro Hac Vice applications to be submitted*
*Counsel for Plaintiff and the Proposed*
*Classes*