IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LANDRIA R. ADAMS,
individually and on behalf of
all others similarly situated,

      Plaintiff,

v.                            Case No. 5:23-cv-00441-GAP-PRL

GENESIS ELDERCARE REHABILITATION
SERVICES, LLC, d/b/a POWERBACK
REHABILITATION, LLC, f/k/a GENESIS
REHAB SERVICES; GENESIS HOLDINGS, LLC
GENESIS HEALTHCARE, INC.,

      Defendants.

_____/

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER
AND MEMORANDUM IN SUPPORT**

Defendants GENESIS ELDER CARE REHABILITATION SERVICES, LLC,

d/b/a POWERBACK REHABILITATION, LLC, f/k/a GENESIS REHAB

SERVICES[1]; GENESIS HOLDINGS, LLC GENESIS HEALTHCARE, INC.

(collectively "Defendants"), through their undersigned counsel, moves this Court

to enter a protective order under Fed. R. Civ. P. 26(c) limiting the scope of

---

[1] Genesis ElderCare Rehabilitation Services, LLC changed its corporate name and is now known as Powerback Rehabilitation, LLC.

1

Plaintiff's Rule 30(b)(6) deposition of Defendants' Corporate Representative. In support of this motion, Defendants state as follows:

## BACKGROUND

1.      On July 14, 2023, Plaintiff filed a putative class action claim for religious discrimination against Defendants. (ECF No. 1).

2.      On August 9, 2023, Defendants filed a Motion to Compel Arbitration based on the arbitration agreement Plaintiff assented to during her employment. (ECF No. 11). Defendants instituted an arbitration program for all non-union employees in May 2019, and presented employees, including Plaintiff, with its "Mutual Arbitration Agreement"[2] through Defendants' online OnTrack system in May 2019. If employees failed to sign the agreement online, they were provided with a copy of the "No Signature Mutual Arbitration Agreement,"[3] which did not require their signature and advised them that continued employment for five days indicated assent to the agreement.

3.      When Plaintiff failed to sign the Mutual Arbitration Agreement electronically, Defendant Powerback, through Plaintiff's supervisor Denise

---

[2] For purposes of this Motion, "Mutual Arbitration Agreement" means the arbitration agreement created by Defendants in 2019 and distributed to employees, including Plaintiff, for signature on OnTrack; *see* Exhibit 2 to ECF No. 11-2 (also attached as Exhibit 1-D to ECF No. 28-1).

[3] For purposes of this Motion, "No Signature Mutual Arbitration Agreement" means the copy of Defendants' Mutual Arbitration Agreement that did not require a signature from the employee, provided to employees, including Plaintiff, who did not electronically sign the Mutual Arbitration Agreement through OnTrack; *see* Composite Exhibit 1 to ECF No. 11-1 (also attached as Exhibit 1-B to ECF No. 28-1).

2

Zachary, provided Plaintiff with the No Signature Mutual Arbitration Agreement on July 15, 2019. Plaintiff disputes receipt.

4.      Subsequently, on September 2, 2020, Plaintiff signed the Mutual Arbitration Agreement through Defendants' OnTrack system. Plaintiff does not dispute she signed the agreement online, but disputes that her signature indicated her agreement to be bound to the Mutual Arbitration Agreement.

5.      On August 23, 2023, Plaintiff asked the Court for the opportunity to engage in limited arbitration-related discovery. (ECF Nos. 20-21).[4] Plaintiff's request for limited discovery listed seven specific topics for Plaintiff to address in discovery:

(1)     Whether and how Plaintiff received and assented to all versions of Defendants' Mutual Arbitration Agreement ("MAA"), including the 2019 and 2020 arbitration provisions;
(2)     Whether Plaintiff electronically signed the 2020 MAA;
(3)     Whether Plaintiff's electronic signature is on the 2020 MAA;
(4)     Any evidence that Plaintiff reviewed or signed the 2020 MAA on Defendants' website;
(5)     Defendants' related mutual arbitration agreements and transmittal e-mails;
(6)     Defendants' email and communications related to Plaintiff's refusal and failure to sign the MAAs; and
(7)     Any disputes Defendants have initiated against their employees in arbitration.

---

[4] Plaintiff submitted her motion as ECF No. 20, and filed her memorandum of law in support as ECF No. 21. Pursuant to the Local Rules, motions and the legal memorandum in support should be filed as <u>one document</u>. *See* Local Rule 3.01(a). Accordingly, references to ECF No. 20 (the motion) inherently incorporate the legal memorandum (ECF No. 21).

(ECF No. 21, pg. 2). Plaintiff also asked to take the deposition of a 30(b)(6) deponent and Defendant's declarant (Denise Zachary). *Id.*

6. The Court ruled there is a genuine dispute as to a material fact as to whether a valid written agreement to arbitrate exists between the parties, and ordered a two-day jury trial to address this single, <u>limited issue</u>. (ECF No. 43).

7. On Monday, January 29, 2024, Plaintiff noticed a deposition of a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) ("30(b)(6) notice"), which included nineteen topics for which testimony was sought. (ECF No. 48).

8. Shortly after receiving the notice (on Monday, January 29, 2024), Defendants' counsel contacted Plaintiff's counsel to set up a time to discuss Defendants' objections to the 30(b)(6) notice. The parties agreed to speak the next day (Tuesday, January 30, 2024). However, Plaintiff's counsel moved the meeting until Wednesday, January 31, 2024.

9. On Wednesday, January 31, 2024, the parties conferred about the 30(b)(6) noticed topics to resolve Defendants' objections. Following the discussion, Plaintiff's counsel agreed to revise their notice, and the parties agreed to confer again if there were any outstanding issues.

10. On Thursday, February 1, 2024, Plaintiff served an amended notice of deposition of a corporate representative ("amended 30(b)(6) notice"), which

4

included twenty topics, most of which were identical to those listed in the original notice.[5] *See* **Exhibit A**, attached hereto.

11.     On February 5, 2024, counsel for the parties once again conferred on the notice to resolve Defendants' objections. The conferral call was unsuccessful.[6]

12.     Defendants now seek entry of a protective order limiting the scope of the 30(b)(6) deposition to appropriate topics of inquiry, as set forth in further detail below. Specifically, Defendants object to all or portions of Topics 3, 7, 8, 9, 10, 11, 12, 14, 16, 17, 18, 19, and 20.

**MEMORANDUM OF LAW**

## I.     STANDARD FOR A PROTECTIVE ORDER

District courts have broad discretion in controlling discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005). "Rule 26(c) gives the district court discretionary power to fashion a protective order. The decision does not depend upon a legal privilege." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). When a party "objects

---

[5] The amended 30(b)(6) notice also indicates that the deposition will begin "at 8:30 AM (EST) and continu[e] day-to-day until fully completed," which runs afoul of Fed. R. Civ. P. 30(d)(1), which limits a deposition to one day of seven hours unless otherwise authorized by the Court or stipulated by the parties.

[6] Counsel conferred again on February 7, 2024, and determined there is a fundamental difference in how the Parties view the permissible scope of discovery related to the issue to be tried on March 11-12, 2024. Counsel agreed to postpone the 30(b)(6) deposition, previously scheduled for February 9, 2024, pending resolution of this Motion and Plaintiff's Motion to Compel, which Plaintiff intends to file concurrently with this Motion. The Parties also agreed to file a Joint Motion for Extension of Discovery to allow the Court to rule on these competing motions. The Parties will reschedule the 30(b)(6) deposition following resolution of the discovery dispute.

to opposing counsel's manner of conducting discovery, including depositions, the proper remedy is to seek a protective order." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1325 (11th Cir. 2002).

The court may limit discovery by entry of a protective order upon a showing of good cause "which calls for a 'sound basis or legitimate need' to limit discovery of the subject information." *Sierra Equity Grp. v. White Oak Equity Partners, LLC*, 672 F.Supp.2d 1369, 1370–71 (S.D. Fla. 2009) (citing *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987)). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required . . . the trial court is in the best position to weigh freely the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## II.   THE SCOPE OF DISCOVERY UNDER THE FEDERAL RULES OF CIVIL PROCEUDRE

As a threshold matter, the Court has held there is a single, narrow issue to be tried: whether a valid arbitration agreement exists between the parties. (ECF No. 43 at 9-10). And as the Court further notes, Plaintiff sought leave to "**conduct limited arbitration-related discovery**" in this cause (ECF No. 43 at 9 n.4).

Generally, even if this Court had not already significantly narrowed the

issues on which Plaintiff may conduct discovery, the scope of discovery is "not unlimited. The requested discovery must be relevant, and must not impose an undue burden." *I.S.E.L., Inc. v. American Synthol, Inc.*, No. 3:08-cv-870, 2009 WL 3367237, at *2 (M.D. Fla. Oct. 15, 2009). Federal Rule of Civil Procedure 26(b) limits discovery to "any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b). For example, federal courts have held that overly broad discovery requests that amount to nothing more than mere "fishing expeditions" will not be tolerated. *See, e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("[D]istrict courts need not condone the use of discovery to engage in fishing expedition[s]."); *Goldin v. Boce Group, L.C.*, 773 F.Supp.2d 1376, 1381 (S.D. Fla. 2011) ("Discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim."). Relevant and discoverable evidence may also be protected from disclosure where good cause is shown by the party from whom discovery is sought for the court to issue a protective order, "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(D); *Netjets Aviation, Inc. v. Peter Sleiman Dev.*, 2011 WL 768066, at *2 (M.D. Fla. 2011).

Here, the Court already has limited the scope of discovery even further than the bounds of Rule 26, and any corporate representative topics that extend beyond

the "limited" scope of the single issue before the Court (i.e. whether a valid arbitration agreement exists between the parties) are disproportionate to the needs of the case and irrelevant. Courts routinely limit Rule 30(b)(6) depositions on grounds of disproportionality. *See Santos v. Bank of Am., N.A.*, No. 8:17-CV-2588-T-23MAP, 2018 WL 3391330 (M.D. Fla. May 2, 2018) (limiting scope of plaintiff's Rule 30(b)(6) deposition topics to a single topic because all other topics exceeded the scope of plaintiff's remaining single claim); *Fla. v. United States,* 342 F.R.D. 153 (N.D. Fla. 2022) (excluding irrelevant corporate representative topics); *IN RE: DEEPWATER HORIZON BELO CASES This Ord. Relates to: Wesley Covert, 3:21cv3287 Jeffrey Lawrence, 3:23cv59 Taurus Lewis, 3:22cv18637 Gill McGee, 3:18cv2364*, No. 3:18CV2364, 2023 WL 9229118 (N.D. Fla. Sept. 5, 2023).

## III.   GENERAL OBJECTIONS

### A.   *Topics 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 14, 16, 17, 18, 19, and 20 Exceed the Limited Scope of Discovery in the Matter Set for Trial March 11-12, 2024.*

Like other forms of discovery, a Rule 30(b)(6) notice is subject to the limitations imposed by Federal Rule of Civil Procedure 26. *See Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 38 (S.D.N.Y. 2009) (stating that the "proper scope of the questioning of a Rule 30(b)(6) witness is not defined by the notice of deposition, but by Rule 26(b)(1) of the Federal Rules of Civil Procedure, unless a court otherwise directs.") In relevant part, Rule 26(b)(1) states:

8

> "Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's **claim** or defense and **proportional** to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(1) (2020) (emphasis added).

By the express terms of Rule 26, **topics noticed under Rule 30(b)(6) must be relevant to a party's claim or defense**. *See Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008) ("a matter is deemed to be irrelevant if it does not pertain to a claim or defense.") Many topics in Plaintiff's Amended Notice of Rule 30(b)(6) Deposition are irrelevant to the single issue now before this Court, *i.e.* whether an arbitration agreement exists between the parties, and are not proportional to the needs of this threshold issue, *i.e.* conducting "limited arbitration-related" discovery to determine whether a valid agreement exists.

By Plaintiff's estimations, Defendants collectively have between 40,000 and 70,000 employees, and despite Defendants' efforts to narrow the scope, Plaintiff's amended 30(b)(6) notice includes several topics asking for information about <u>all</u> employees. For example, Plaintiff is asking Defendants' corporate representative to be prepared to testify on topics including, but not limited to:

- "For each Mutual Arbitration Agreement delivered to [Defendants'] employees […] The unique identification number" (Topic 7)

9

- "For [July 14, 2015 to the present], the computer systems, databases, and storage media [ ] on which [Defendants] stores: [ ] Email" (Topic 8)
- "Average number of part- and full-time employees employed by [Defendants] during [July 14, 2015 to present]" (Topic 17)

These are only a few examples of how the above-referenced topics are irrelevant and disproportionate to Plaintiff's claim and the only relevant issue in the case: whether an arbitration agreement exists between <u>Plaintiff</u> (and only Plaintiff) and her former employer.

**B.      *Topics 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 14, 16, 17, 18, 19, and 20 Fail to Meet the Reasonable Particularity Requirement and Are Overly Broad and/or Vague***

Defendants also object to the topics for failing to meet the reasonable particularity requirement of Rule 30(b)(6). Generally, a corporate party "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters." *Catalina Rental Apartments, Inc. v. Pacific Ins. Co.*, Ltd., 2007 U.S. Dist. LEXIS 20760, 2007 WL 917272 (S.D. Fla. 2007) (citation omitted). For that reason, Rule 30(b)(6) requires the deposing party to "describe with ***reasonable particularity*** the matters on which examination is requested." Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose of the reasonable particularity requirement is to allow the business to identify a witness or witnesses who possesses knowledge responsive to the

subjects identified in the Rule 30(b)(6) notice." *Albert v. DRS RSTA, Inc.*, No. 6:11-CV-869-ORL-36, 2012 WL 3553842, at *2 (M.D. Fla. Aug. 17, 2012).[7]

Where the outer limits of the areas of inquiry cannot be identified, "compliant designation is not feasible." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).  Here, many, if not most, of Plaintiff's proposed topics ask for "any" and/or "all" of the communications and information related to the particular area of inquiry, and the temporal and subject limitation impermissibly broaden the scope of the designated topics into matters irrelevant to this case. For instance, Plaintiff requests:

- "All electronic databases, programs, or storage media (*i.e.*, back-up tapes or archives) used by Defendants during [July 14, 2015 to present] that recorded or stores the following categories of data: …" (Topic 6)
- "All communications and information related to the Mutual Arbitration Agreement…" (Topic 9)
- "Any addenda, revisions, or modifications to the arbitration agreement made during [July 14, 2015 to present], including the reasons and process for making such changes, the persons responsible for considering and for implementing such changes, documents describing and referencing the consideration or implementation of such changes, as such changes related to Defendants' arbitration policies and/or explanation thereof" (Topic 14).

Finally, Plaintiff's topics are generally overbroad with respect to requests regarding all of Defendants' employees. Plaintiff was employed by only one

---

[7] The Middle District of Florida Discovery Handbook further explains that the 30(b)(6) deposition notice "should accurately and concisely identify the designated area(s) of requested testimony, giving due regard to the nature, business, size, and complexity of the entity being asked to testify." *Regions Bank v. Kaplan*, 8:12-CV-1837-T-17MAP, 2015 WL 13708449, at *2 (M.D. Fla. Aug. 24, 2015).

Defendant (Powerback Rehabilitation, LLC, f/k/a Genesis Rehab Services), which on its own, at or around the time of the Mutual Arbitration Agreement rollout, employed over 12,000 employees. Defendants cannot be expected to prepare a corporate representative to discuss all of Defendant Powerback's 12,000 employees' arbitration agreements, and any conversations or other communications related to each employee's decision to sign or not sign the Mutual Arbitration Agreement – much less all such agreements and conversations related to all employees of Defendants'.[8]

C.     **The Relevant Time Period, as referenced in Topics 1, 3, 6, 8, 14, 17, 18, 19, and 20 is Overbroad**

While no hard-and-fast rule limits the time frame for discovery, "Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *In re Brinker Data Incident Litig.*, 337 F.R.D. 424, 425 (M.D. Fla. 2020) (quoting *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2016 U.S. Dist. LEXIS 46206, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (internal quotations omitted)). Plaintiff has defined "Relevant Time Period" as July 14, 2015 to the present. However, the events giving rise to the issue before the Court (whether the parties entered into a valid

---

[8] Plaintiff alleged that she was fraudulently induced to sign the Mutual Arbitration Agreement. *See* ECF No. 36 at 3. As such, communications related to the No Signature Mutual Arbitration Agreement that are unrelated to Plaintiff are wholly irrelevant.

arbitration agreement) spanned from May 2019 (when the arbitration program commenced) through September 2020 (when Plaintiff electronically signed the arbitration agreement). As such, the Relevant Time Period should be limited and tailored to the relevant time of the issues before the Court, which, at the latest, ends with the end of Plaintiff's employment with Powerback. *See e.g. United States v. Physician Partners, LLC*, No. 8:19-CV-1236-KKM-SPF, 2023 WL 8254360, at *2 (M.D. Fla. Nov. 29, 2023).

## IV.    SPECIFIC OBJECTIONS TO 30(B)(6) TOPICS

Plaintiff's amended 30(b)(6) notice lists twenty topics. While Defendants rely on the case law and arguments made above from a global perspective, each topic to which Defendants object is listed below with specific arguments for each:[9]

**Topic 3: Defendants' past and current disputes during the Relevant Time Period with former and current employees in which Defendants' have moved or sought to compel arbitration.**

Defendants object to this topic on the grounds that it exceeds the scope of discovery and is not relevant to the issue of whether an enforceable arbitration

---

[9] Although not the focus of this Motion for Protective Order, Defendants will raise appropriate objections during any Rule 30(b)(6) deposition to the extent the attorney-client privilege applies to proffered questions. For example, a number of Plaintiff's requested topics address the creation, changes, modifications, addenda, and revisions to the Mutual Arbitration Agreement and the No Signature Mutual Arbitration Agreement, which were driven by in-house and outside counsel. As such, the creation of and any revisions to the agreement are protected by the attorney-client privilege. Courts in the Eleventh Circuit have held that preliminary drafts of contracts are generally "protected by attorney-client privilege, because they reflect not only client confidences, but also the legal advice and opinions of attorneys." *Burgos-Stefanelli v. Napolitano*, No. 09-60118-CIV-Hurley/Hopkins, 2009 U.S. Dist. LEXIS 136772, at *6 (S.D. Fla. Dec. 17, 2009) (internal quotations omitted).

agreement exists between the parties. Instead, this topic relates to the issue of waiver, which the Court already has ruled is not at issue for trial. *See* ECF No. 43 at 9 n.4. Furthermore, Defendants object to this topic on the grounds that it is overly broad and unduly burdensome because it is not limited in scope, business unit, geographic area, time, or the specific circumstances at issue in any such dispute that does not involve Plaintiff, and therefore fails to meet the reasonable particularity requirement of Rule 30(b)(6). The disputes Defendants may have initiated against current or former employees through a motion to compel arbitration has <u>no</u> bearing on the issue before the Court (whether an arbitration agreement exists between Plaintiff and Defendants). Defendants also seek protection from any question on this subject that would violate the attorney-client privilege and/or the work product doctrine and state that any motions to compel arbitration (which by their nature must be filed in court) are equally available to Plaintiff. For all of these reasons, Defendants request an Order excusing them from producing a corporate representative to testify about this topic.

**Topic 7: For each Mutual Arbitration Agreement delivered to Defendants' employees, the following information, including, but not limited to:**
   a) **The date delivered;**
   b) **The unique identification number;**
   c) **The employee to whom the Mutual Arbitration Agreement was delivered;**
   d) **Whether the Mutual Arbitration Agreement was Acknowledged, Cancelled, or no response; and**
   e) **Timestamps.**

14

Defendants agree to produce a corporate representative to discuss how the Mutual Arbitration Agreement was delivered to Plaintiff, including the date delivered, unique identification number, and the timestamp reflecting the date and time Plaintiff executed the agreement. However, Defendants object to this topic (including all subparts) to the extent it seeks specific information about individually executed Mutual Arbitration Agreements for each or any employee (other than Plaintiff). Without any limitation, and as drafted, subparts (a) through (e) fail to meet the reasonable particularity requirement of Rule 30(b)(6) as overly broad and unduly burdensome as to every employee. There is no way that a corporate representative could discuss every other employee of Defendants who ever executed a Mutual Arbitration Agreement (including, for each, the information requested in (a) – (e)). Whether any other employee other than Plaintiff executed a Mutual Arbitration Agreement has no bearing on the issue before the Court (whether an arbitration agreement exists between Plaintiff and Defendants). Defendants request an Order excusing them from producing a corporate representative to testify about this topic (including subparts (a) through (e)) to the extent the topic seeks specific information about individually executed Mutual Arbitration Agreements for each employee (other than Plaintiff).

**Topic 8: For the Relevant Time Period, the computer systems, databases, and storage media (i.e., back-up tapes or archives) on which Defendant stores:**
    **a) Email;**

15

**b) Non-email documents including, but not limited to, word processing documents, PowerPoint presentations, or spreadsheets created by Defendant employees; and**

**c) Non-email documents including, but not limited to, word processing documents, PowerPoint presentations, or spreadsheets created by third parties and delivered to Defendant via means other than email.**

Defendants agree to produce a corporate representative to discuss generally how Defendants electronically store email and other documents relating to the Mutual Arbitration Agreement and No Signature Mutual Arbitration Agreement. However, Defendants object to this topic to the extent it is overly broad and unduly burdensome because it is not limited in scope, geographic area, or in time, and fails to identify with any reasonable particularity the emails and non-email documents for which Plaintiff seeks information, and therefore fails to meet the reasonable particularity requirement of Rule 30(b)(6). Defendants request an Order excusing them from producing a corporate representative to testify about the systems, databases, or other electronic storage of any specific email or non-email document as listed in subparts (a) through (c).

**Topic 9: All communication and information related to the Mutual Arbitration Agreement, including but not limited to, information related to:**
**a) The creation of the Mutual Arbitration Agreement;**
**b) The method for displaying the Mutual Arbitration Agreement in an employee's OnTrack window;**
**c) The creation of the "Acknowledge" and "Cancel" buttons shown at the bottom of the Mutual Arbitration Agreement in the OnTrack window;**
**d) The decision to exclude the signature block from the image of the Mutual Arbitration Agreement shown in the OnTrack window;**

16

e) **The decision to withhold the final copy of the Mutual Arbitration Agreement from employees unless they specifically request it by choosing to "Print" the document; and**

f) **The decision to not provide employees with a finalized copy of the Mutual Arbitration Agreement the moment they click the "Acknowledge" button.**

Defendants object to this topic, including all subparts, as the topic seeks information regarding the creation of the Mutual Arbitration Agreement, the decisions related to the creation of the Mutual Arbitration Agreement and its display in OnTrack, and those communications are protected by attorney-client privilege. The arbitration program was created by counsel for Defendants and such counsel directed its implementation.[10] To the extent the topic seeks "all…information" related to the Mutual Arbitration Agreement, the topic appears to seek privileged information and lacks specificity sufficient for Defendants to prepare a corporate representative for the topic. Moreover, subparts (d) through (f) are argumentative and assume facts not in evidence. Accordingly, Defendants request an Order excusing them from producing a corporate representative to testify about this topic.

**Topic 10: All communication and information related to the Mutual Arbitration Agreement requested in Matter # 9 includes, but is not limited to:**
   a) **Emails;**
   b) **Memoranda;**
   c) **Electronic messages (including text messages, instant messages, and company intranet, electronic bulletin board or Internet site posting);**

---

[10] *See also* footnote 8, *supra*.

17

d)  **Phone records;**
e)  **Meeting minutes;**
f)  **Oral communication;**
g)  **Non-email documents including, but not limited to, word processing documents, PowerPoint presentations, or spreadsheets created by Defendant employees; and**
h)  **Non-email documents including, but not limited to, word processing documents, PowerPoint presentations, or spreadsheets created by third parties and delivered to Defendant via means other than email.**

Defendants object to this topic as its seeks information regarding communications related to Topic No. 9, which are protected by attorney-client privilege because the arbitration program was created by counsel and implemented at the direction of counsel.[11] To the extent the topic seeks "all…information" related to the Mutual Arbitration Agreement, the topic appears to seek privileged information lacks specificity sufficient for Defendants to prepare a corporate representative for the topic.  Defendants also object to the topic to the extent it is overbroad and unduly burdensome, as Defendants cannot even quantify the number of possible communications are requested in this topic. Defendants request an Order excusing them from producing a corporate representative to testify about this topic.

**Topic 11: All communication and information related to the No Signature Mutual Arbitration Agreement, including but not limited to information related to:**

a)  **The creation of the No Signature Mutual Arbitration Agreement;**

---

[11] *See also* footnote 8, *supra*. Defendants also incorporate by reference their objections set forth in response to Topic No. 9.

**b) The distribution and delivery of the No Signature Mutual Arbitration Agreement;**

**c) The instructions regarding how to deliver the No Signature Mutual Arbitration Agreement; and**

**d) The instructions regarding to whom to deliver the No Signature Mutual Arbitration Agreement.**

Defendants agree to produce a corporate representative to discuss subparts (b) through (d) regarding how Defendants distributed and delivered the No Signature Mutual Arbitration Agreement to employees of Powerback generally, and Plaintiff specifically. However, Defendants object to this subpart (a) to the extent it seeks information regarding the creation of the No Signature Mutual Arbitration Agreement, and decisions related to the creation, as those discussions are protected by attorney-client privilege because the arbitration program was created by and implemented at the direction of counsel.[12] To the extent the topic seeks "all communication" and "all…information" related to the No Signature Mutual Arbitration Agreement, the topic appears to seek privileged information lacks specificity sufficient for Defendants to prepare a corporate representative for the topic. Defendants also object to subparts (b) through (d) to the extent they seek specific information about the distribution of the No Signature Mutual Arbitration Agreements for each or any employee (other than Plaintiff). Without any limitation, and as drafted, subparts (b) through (d) fail to meet the reasonable

---

[12] *See also* footnote 8, *supra*.

particularity requirement of Rule 30(b)(6) as overly broad and unduly burdensome as to every applicable employee. There is no way a corporate representative could discuss "all communications and information" related to every other employee of Defendants who ever received a No Signature Mutual Arbitration Agreement. Whether (and how) any other employee other than Plaintiff received a No Signature Mutual Arbitration agreement has no bearing on the issue before the Court (whether an arbitration agreement exists between Plaintiff and Defendants). Defendants request an Order excusing them from producing a corporate representative to testify about subpart (a) in its entirety, and subparts (b) through (d) to the extent the topic seeks specific information about the No Signature Mutual Arbitration Agreement delivery for each applicable employee (other than Plaintiff) and/or seeks information regarding privileged communications.

**Topic 12: All communication and information related to the No Signature Mutual Arbitration Agreement requested in Matter # 11 includes, but is not limited to:**
   a) **Emails;**
   b) **Memoranda;**
   c) **Electronic messages (including text messages, instant messages, and company intranet, electronic bulletin board or Internet site posting);**
   d) **Phone records;**
   e) **Meeting minutes;**
   f) **Oral communication;**
   g) **Non-email documents including, but not limited to, word processing documents, PowerPoint presentations, or spreadsheets created by Defendant employees; and**

20

**h) Non-email documents including, but not limited to, word processing documents, PowerPoint presentations, or spreadsheets created by third parties and delivered to Defendant via means other than email.**

Defendants agree to produce a corporate representative to discuss communications related to how Defendants' delivered the No Signature Mutual Arbitration Agreement to employees of Powerback generally, and Plaintiff specifically. However, Defendants object to the extent that this topic seeks information regarding communications related to the creation of the No Signature Mutual Arbitration Agreement, which are protected by attorney-client privilege because the arbitration program was created by counsel and implemented at the direction of counsel.[13] To the extent the topic seeks "all…information" related to the No Signature Mutual Arbitration Agreement, the topic appears to seek privileged information lacks specificity sufficient for Defendants to prepare a corporate representative for the topic. Defendants also object to the topic to the extent it is overbroad and unduly burdensome, as Defendants cannot even quantify the number of possible communications are requested in this topic. Defendants request an Order excusing them from producing a corporate representative to testify about this topic to the extent it involves communications with counsel.

---

[13] *See also* footnote 8, *supra*. Defendants also incorporate by reference their objections set forth in response to Topic No. 11.

21

**Topic 14: Any addenda, revisions, or modifications to the arbitration agreement made during the Relevant Time Period, including the reasons and process for making such changes, the persons responsible for considering and for implementing such changes, documents describing and referencing the consideration or implementation of such changes, as such changes related to Defendants' arbitration policies and/or explanation thereof.**

Defendants object to this topic as it seeks information regarding the creation and changes or modifications (if any) that were considered or implemented as those discussions are protected by attorney-client privilege because the arbitration program was created and implemented at the direction of counsel.[14] Defendants also object to this topic as overly broad as to timeframe, as it seeks information on "addenda, revisions, or modifications to the arbitration agreement" that were made after Plaintiff's employment with Defendants ended. Defendants request an Order excusing them from producing a corporate representative to testify about this topic.

**Topic 16: Creation and Delivery of the No Signature Mutual Arbitration Agreement to Plaintiff.**

Defendants agree to produce a corporate representative to discuss the delivery of the No Signature Mutual Arbitration Agreement to Plaintiff. However, Defendants object to this topic to the extent that the topic seeks information regarding the creation of the No Signature Mutual Arbitration Agreement as those discussions are protected by attorney-client privilege because the arbitration

---

[14] *See also* footnote 8, *supra*.

program was created by counsel and implemented at the direction of counsel.[15]

Defendants request an Order excusing them from producing a corporate representative to testify about the creation of the No Signature Mutual Arbitration Agreement.

**Topic 17: Average number of part- and full-time employees employed by the Defendants during the Relevant Time Period.**

Defendants object to Topics 17-20 on the grounds they exceed the scope of discovery and are not relevant to the issue of whether an enforceable arbitration agreement exists between the parties. Defendants object to these topics on the grounds that they are overly broad and unduly burdensome because they are not limited in scope, geographic area, business unit, or in time. Specifically, Topics 17-20 seek information about all employees of Defendants and do not reference Plaintiff. Whether or not any other employee (other than the Plaintiff) executed a Mutual Arbitration Agreement has no bearing on the issue before the Court of whether an arbitration agreement exists between Plaintiff and Defendants. Defendants request an Order excusing them from producing a corporate representative to testify about Topics 17-20.

**Topic 18: The total number of full and part-time employees employed by the Defendants at the end of each calendar year during the Relevant Time Period.**

Please see above objection for Topic 17.

---

[15] *See also* footnote 8, *supra*.

23

**Topic 19: The number of employees that were terminated for refusing to sign an arbitration agreement during the Relevant Time Period.**

Please see above objection for Topic 17.

**Topic 20: The number of employees known to the Defendants who voluntarily terminated their employment with the Defendants during the Relevant Time Period because of their refusal to sign or agree to an arbitration agreement.**

Please see above objection for Topic 17.

**WHEREFORE**, Defendants request the entry of a Protective Order as to

Topics 3, 7, 8, 9, 10, 11, 12, 14, 16, 17, 18, 19, and 20 as detailed herein.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), I hereby certify that I conferred with

opposing counsel telephonically on February 5, 2024 and February 7, 2024.

Opposing counsel does not consent to the relief sought in the motion.

Dated: February 9, 2024.        Respectfully submitted,

> /s/ Lara J. Peppard
> Elizabeth T. Jozsi; FBN: 119428
> Karen M. Morinelli; FBN: 818275
> Lara J. Peppard; FBN: 520055
> OGLETREE, DEAKINS, NASH,
>   SMOAK & STEWART, P.C.
> 100 North Tampa Street, Suite 3600
> Tampa, FL  33602
> T: 813.289.1247; F: 813.289.6530
> elizabeth.jozsi@ogletree.com
> karen.morinelli@ogletree.com
> lara.peppard@ogletree.com
> *Attorneys for Defendants*

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 9, 2024, the foregoing was electronically filed via CMECF, which will notice of electronic filing to:

ADAMS & ADAMS LAW, PLLC
Micah Ann Adams, Esq.; Felix M. Adams, Esq.
micahadams@felixadams.com; felixadams@felixadams.com

JENNINGS PLLC
Winston S. Hudson, Esq.
winston@jenningspllc.com

*/s/ Lara J. Peppard*
Attorney

25

60696798.v1-OGLETREE